FILED

2025 Nov-19  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **B R I T T A N Y    N I C O L E CAMERON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:25-cv-16-CLS** |
| | ) | |
| **H U N T S V I L L E    H O U S I N G AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Brittany Nicole Cameron commenced this action without the assistance of counsel. Doc. no. 1 (*Pro se* Complaint for Employment Discrimination filed on January 6, 2025). She asked the court to allow her to proceed without prepayment of fees, and also for the appointment of counsel. Doc. no. 2. Based upon the financial information submitted in support of that motion, the court denied plaintiff's request to proceed *in forma pauperis*. Even so, because the court perceived that, if properly presented by counsel, there might be a plausible basis for some of plaintiff's untutored claims, the court appointed Jeffrey R. McLaughlin to represent her. Doc. no. 3.

Appointed counsel later filed an amended complaint which alleged claims of a racially hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, as well as

a claim for "wrongful termination" of plaintiff's employment. Doc. no. 4. Defendant responded by moving to dismiss all of plaintiff's claims. Doc. no. 10. The court denied the motion to dismiss plaintiff's claims of a racially hostile work environment and retaliation, but granted the motion with respect to her wrongful termination claim. Doc. no. 19. The court also directed plaintiff to file another amended complaint, addressing the deficiencies identified in the court's memorandum opinion. *Id*. The second amended complaint was filed on July 28, 2025, doc. no. 20, and that now is the operative pleading. It alleges claims of a racially hostile work environment (Counts I and II) and retaliation (Counts III and IV) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. *Id.* This opinion addresses defendant's motion to dismiss all of those claims. Doc. no. 21.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a black female. She was employed by defendant in June of 2022 as a "Housing Choice Voucher Family Self-Sufficiency Coordinator."[1] Her job duties included assisting low-income families to identify and obtain affordable housing, and advocating for fair housing on behalf of program participants. "For almost a year and a half, Plaintiff had no disciplinary issues [and she] was even commended by upper management for her good work."[2]

---

[1] Doc. no. 20 (Second Amended Complaint), ¶ 4.

[2] *Id.* (alteration supplied).

During September of 2023, however, plaintiff and a white co-worker named Ashley Crawford argued about the interpretation of a Huntsville Housing Authority policy relating to inspections of client properties.[3]  Crawford allegedly "berated" plaintiff, instructed her to not "overstep her boundaries," and told plaintiff to stop speaking to her.[4]  Following that argument, plaintiff attempted to arrange a meeting with Crawford and plaintiff's supervisor, Carmisia Danson, but Crawford refused to attend.[5]

Even so, plaintiff proceeded to discuss the incident with Supervisor Danson, and told her that she believed Crawford received more favorable treatment because of her race (white).[6]  White persons were a minority of the defendant housing authority's employees.  Danson, who (like plaintiff) is a black female, told plaintiff not to speak to Crawford.[7]  Following the meeting with Danson, plaintiff submitted a letter to defendant's Human Resources Department on October 31, 2023, memorializing her concerns about Crawford.[8]  Notably, the letter did not contain any reference to race discrimination.

Approximately one month later, plaintiff began reporting to a different

---

[3] *Id.* ¶ 5.

[4] *Id.*

[5] *Id.*

[6] *Id.* ¶ 6.

[7] Doc. no. 20 (Second Amended Complaint) ¶ 6.

[8] *Id.*  The referenced letter is appended as an exhibit to the Second Amended Complaint.

supervisor, Sakeenah Bowden, who also is a black female.[9]  Plaintiff told Bowden of her belief that, following her September 2023 "altercation" with Crawford, she had been discriminated against because of her race, and she feared retaliation.[10]  During their conversation, Bowden characterized plaintiff's description of Crawford's behavior as "bullying," but did not take further action.[11]

Plaintiff and Crawford had another negative interaction during either late December 2023 or early January 2024.  Plaintiff alleges that Ashley Crawford "again scolded Plaintiff, when Plaintiff informed Ms. Crawford and another colleague about a housing inspection."[12]  Plaintiff also reported that incident to Bowden.[13]

Thereafter, plaintiff perceived changes in her working conditions.  Specifically, she alleges that:

•    she was assigned to an office that was "not comparable" to those of her co-workers;

•    she was the only employee required to purchase her own moving supplies;

•    she had to endure jokes and remarks from co-workers about the size and condition of her office;

•    she was given "unreasonable" deadlines by Bowden;

---

[9] *Id.* ¶ 7.

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 8.

[13] Doc. no. 20 (Plaintiff's Second Amended Complaint) ¶ 8.

4

- she was required to work beyond her scheduled hours; and,

- she was not informed in a timely manner of the arrangements for an official work trip, whereas other employees were told of the arrangements prior to the trip.[14]

In January of 2024, plaintiff requested a meeting with supervisor Sakeenah Bowden and Bowden's supervisor, Jacqueline Egbujo, to discuss her perception that she had experienced discrimination and retaliation. Bowden declined to meet with her, and so plaintiff met with Egbujo alone.[15] Egbujo "dismissed" plaintiff's concerns, and praised Bowden.[16]

Plaintiff then requested a meeting with Antonio McGinnis, Chief Executive Officer of the Huntsville Housing Authority. McGinnis and Bowden's supervisor, Jacqueline Egbujo, met with plaintiff, who explained her belief that Ashley Crawford had discriminated and retaliated against her based upon plaintiff's race.[17] Plaintiff was asked to document her complaint in writing, and she did so.[18]

Shortly thereafter, on February 1, 2024, plaintiff received a written reprimand, stating that she was "not cooperative, respectful, or considerate in her relationships

---

[14] *Id.* ¶ 9.

[15] *Id.* ¶ 10.

[16] *Id.*

[17] *Id.* ¶ 11.

[18] *Id.* ¶¶ 11 & 12.

with her coworkers and supervisors."[19]  No action was taken on plaintiff's complaint.[20]

Plaintiff received a second reprimand on April 17, 2024, after a complaint had been lodged against her by the landlord of one of plaintiff's clients.[21]

On May 30, 2024, plaintiff's filing cabinet was searched while she was on leave from the office.[22]

Plaintiff's employment was terminated on June 6, 2024.[23]  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and received a "Notice of Right to Sue" on October 28, 2024.[24]  This suit followed.

## II.  STANDARD OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis supplied).    While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does

---

[19] Doc. no. 20 (Plaintiff's Second Amended Complaint) ¶ 12.

[20] *Id.*

[21] *Id.* ¶ 13.

[22] *Id.* ¶ 14.

[23] *Id.*

[24] *Id.* ¶ 14.

demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court

stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s] devoid of "further factual enhancement."  *Id.* at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556.  Determining whether a complaint states

a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157-58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied).

## III.  DISCUSSION

## A.     Racially Hostile Work Environment (Counts I and II)

Plaintiff alleges in Counts I and II of the second amended complaint that she was subjected to a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.[25]  Claims of a racially hostile work environment based upon Title VII and §

---

[25] That statute provides as follows:

**(a)  Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal

1981 are analyzed under the same analytical framework.  *See Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019) (citing *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

A viable hostile work environment claim based upon a plaintiff's race requires the plaintiff to allege that:  (1) she is a member of a protected group (*i.e.*, African-American); (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her race;  (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 (11th Cir. 2002).

---

benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b)  "Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c)  Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

9

As defendant observes, plaintiff's second amended complaint still does not contain factual allegations suggesting that she was subjected to harassment *based upon her race*. Plaintiff contends that she was subjected to "racially charged" comments from her white coworker, Ashley Crawford. However, she points only to Crawford's comment that plaintiff should "stay within her boundaries" as an example. That comment does not, on its face, implicate plaintiff's race.

Moreover, plaintiff provided no factual nexus between her race and her allegations that she was moved to what she considered an inferior office, had to purchase her own moving supplies, and waited "far longer" than co-workers to move to the new office space. Likewise, she failed to show a connection between her race and the alleged imposition of "unreasonable deadlines," or exclusion from planning updates for a work trip. In short, the amended complaint provided no factual context for the court to determine that she has stated a plausible, rather than merely a *possible*, claim of a racially hostile work environment. *See Iqbal*, 556 U.S. at 679.

All of those allegations, without more, are not sufficient to show that plaintiff was subjected to unwelcome harassment based upon her race. There simply is no apparent connection between the incidents identified by plaintiff as harassment and her race. "Title VII does not prohibit all verbal or physical harassment in the workplace'[;] it is directed only at 'discriminat[ion] . . . because of . . . [race].'"

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (ellipsis and alterations supplied); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1253 (11th Cir. 1999) ("Title VII was never intended to protect employees from all unpleasant and rude conduct in the workplace.") (Edmondson, J., concurring). The mere fact that plaintiff and her coworker are of different races does not transform their conflict — or plaintiff's supervisors' alleged failure to address the conflict to plaintiff's satisfaction — into a race discrimination claim. Accordingly, plaintiff has failed to sufficiently allege a claim of a racially hostile work environment, and Counts I and II of the second amended complaint are due to be dismissed.

### B.    Retaliation

To state a claim for retaliation under Title VII and § 1981, a plaintiff must allege: (1) that she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (Title VII); *see also Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009) (elements of a retaliation claim under § 1981 same as those for Title VII retaliation claims).

Defendant does not dispute that plaintiff has sufficiently alleged the first two elements. Thus, only the third is contested. Defendant contends that plaintiff has failed to allege a causal link between her protected activity and the termination of her

employment.[26]

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando American Corp*, 731 F.3d 1196, 1210 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000)). However, when a plaintiff relies on temporal proximity alone to show causation, it must be "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001).

The Eleventh Circuit has held that a "three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Thomas*, 506 F.3d at 1364. Defendant argues that plaintiff's termination, which occurred four or more months following her protected activity, is too remote to show causation. Even so, plaintiff argues that she can show causation in a different way. Specifically, she relies upon the reasoning of United States District Judge William H.

---

[26] Doc. no. 11 (Brief in Support of Motion to Dismiss), at 11-13.

Steele in the case of *Pears v. Mobile County*, 645 F. Supp. 2d 1062 (S.D. Ala. 2009).

Judge Steele stated that

> close temporal proximity is not the only means by which a plaintiff can establish a causal connection. To the contrary, courts have routinely found a causal connection even as to retaliatory acts occurring long after the protected activity, where those events are linked by a chain of intervening retaliatory acts. *See, e.g., Bass* [*v. Board of County Commissioners, Orange County, Fla.*,] 256 F.3d [1095], 1117-19 (deeming causal connection element satisfied even though adverse action occurred more than one year after EEOC charge, where retaliatory acts commenced shortly after charge was filed); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (causal connection requirement satisfied where "the series of adverse employment actions commenced almost immediately after management learned she had filed the charge"); *Odom v. Mobile Infirmary*, 2008 WL 748398, *10 (S.D. Ala. Mar. 17, 2008) (causal connection element was established even though plaintiff was fired seven months after protected activity, where "the chain of retaliatory treatment commenced immediately after she complained."). . . .

*Id.* at 1095-96. Plaintiff argues that the temporal proximity between her protected activity (reports to her supervisors of discrimination and retaliation) and the disciplinary actions and ultimate termination of her employment is sufficient circumstantial evidence of a causal connection.[27] In particular, plaintiff contends that she experienced retaliation in the form of "punitive job requirements, difficult deadlines, withholding of work travel instructions, [and] poor office assignment" almost immediately following her complaint to Bowden about what she believed was racially hostile treatment by Crawford.[28] Additionally, only one week following her

[27] Doc. no. 28 (Plaintiff's Response to Defendant's Motion to Dismiss), at 18-19.
[28] *Id.* at 19 (alteration supplied).

13

submission of a formal grievance, plaintiff received a written reprimand for "not being cooperative, respectful, or considerate in her relationships with her coworkers and supervisors."[29]  A month and a half later, plaintiff received a second formal reprimand, and was terminated shortly thereafter.[30]  Reading the causal connection requirement broadly, the court concludes that those events, viewed collectively, and which began shortly following her initial complaint of discrimination to her supervisor, are enough to show that plaintiff's protected activity and the alleged retaliatory acts are not wholly unrelated.  Accordingly, defendant's motion to dismiss is due to be denied as to Counts III and IV of plaintiff's second amended complaint.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is due to be granted in part and denied in part.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 19th day of November, 2025.

_____
Senior United States District Judge

---

[29] *Id.* at 20.

[30] *Id.*

14